**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

**JOSHUA B. KRITZ**,                              No. 22 Civ. 10360

              Plaintiff,
                                                          **COMPLAINT**

      - against -

**FUBOTV, INC.**, and **PAMELA DUCKWORTH**,       **JURY TRIAL DEMANDED**
*in her individual and professional capacities*,

              Defendants.
-------------------------------------------------------------X

      Plaintiff Joshua B. Kritz hereby brings claims against Defendants FuboTV, Inc. ("FuboTV" or the "Company") and Pamela Duckworth (together, "Defendants"), by alleging and averring as follows:

## NATURE OF THE CASE

    1.    Defendant FuboTV is a rapidly growing and publicly traded sports-focused entertainment media company, estimated to be worth hundreds of millions of dollars, and which purports to be "the world's only sports-focused live TV streaming services,"[1] boasting over one hundred live TV channels in its lineup.

    2.    To attract new employees, FuboTV brands itself as being "good at pushing boundaries [ w]hether it's changing the way people watch live TV or find their next favorite show," which it purports to do "as a team – with creativity, support and really good coffee."[2]

    3.    However, as it turns out, FuboTV's pitch to prospective employees is the epitome of irony and disingenuous corporate lip service; rather, the Company *creates* "boundaries" for

---

[1]    https://www.fubo.tv/welcome
[2]    https://careers.fubo.tv/

and utterly fails to "*support*" its employees who happen to become fathers and exercise their legal right to take paternity leave.

4.      For a company that deals in traditionally male-dominated industries and spaces – sports and technology startups – FuboTV should be at a forefront of and a leader in efforts to dispel inherent toxic and masculine stereotypes that men cannot be both devoted employees to their employer and devoted fathers to their children.

5.      Tragically, instead, as detailed below, FuboTV unlawfully and invidiously discriminates against and punishes its male employees who exercise their legal right to go on paternity leave following the birth of a child.

6.      In fact, rather than support these employees and ensure that their livelihoods are not endangered at a critical time in their lives when they should be focused on forming an intimate bond with their child and helping their partners recover from giving birth, FuboTV goes out of its way to punish them for taking so much time away from work.

7.      No employee should have to choose between their newborn child and partner who just gave birth, and their job and livelihood.

8.      Indeed, FuboTV has demoted and even fired its male employees who unsuspectingly believe (mistakenly) that their jobs are safe and that FuboTV will not penalize them *while* they are on paternity leave.

9.      In contrast, FuboTV *rewards* other male employees — whom it apparently regards as its "company men" — who do not go on or take their full twelve week legally permitted paternity leave by giving them promotions and more responsibilities within the Company.  This is blatant discrimination under the law, and clear violations of the Family Medical Leave Act ("FMLA").

10. Plaintiff Joshua B. Kritz, an award-winning sports television producer, is one such employee whose rights were abhorrently and repeatedly trampled upon and violated merely because he exercised his legally protected right to take his full allotment of paternity leave to help his partner recover from childbirth and to bond with his newborn son.

11. As detailed below, Mr. Kritz exercised his rights under the FMLA to take paternity leave, never fearing that he would be cruelly penalized by FuboTV for doing so.

12. FuboTV was obligated by law not to retaliate against Mr. Kritz for exercising his FMLA rights or otherwise interfere with those rights, and to ensure that he returns to the same or substantially the same role within the Company that he had before going on leave.

13. But that is precisely the opposite of what FuboTV has done. Mr. Kritz was abruptly demoted as soon as he went on paternity leave, stripped of *all* his direct and indirect reports, and told that he had to now report to a less-tenured and less-accomplished peer.

14. To add further insult to injury, shortly after Mr. Kritz complained about this unlawful decision to Defendant Pamela Duckworth, the Head of FuboTV's Fubo Sports Network, he was discriminated and retaliated against once again for exercising his FMLA rights and taking paternity leave, this time by abruptly having his employment terminated while *still on paternity leave*, and for completely bogus reasons and despite his many years of successful performance and dedicated leadership.

15. Simply, had Mr. Kritz not taken paternity leave and/or his full allotment of leave, he would still be employed at FuboTV today, likely in a more senior role and with more responsibilities than he had before going on paternity leave.

16. Importantly, FuboTV's unlawful and retaliatory actions against Mr. Kritz send a chilling, harsh message to other FuboTV employees who seek to exercise their FMLA or other statutorily protected rights: do so at your own peril.

17. Needless to say, at a time when Mr. Kritz and his partner should be happily celebrating the joyous birth of their first child, their young family has been left devastated and without a source of income at a time most in need.

18. Mr. Kritz, who tirelessly and successfully helped FuboTV grow from a fledgling media and technology startup, trying desperately to get a foothold in the streaming television space, to a publicly traded company worth hundreds of millions of dollars, has been left utterly traumatized and depressed due to FuboTV's unlawful actions.

19. Mr. Kritz is left with no choice but to seek redress for FuboTV's disgusting violation of his rights by bringing this action against FuboTV and Ms. Duckworth for retaliating against him for exercising and interfering with his right to take paternity leave pursuant to the Family Medical Leave Act, 29 U.S.C. §§2601 *et seq.* ("FMLA"), discriminating against him based on his gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law, §§ 296, et seq. ("NYSHRL"), and New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107, et. seq. ("NYCHRL"), and by discriminating against him because of his familial status, *i.e.*, for being an active father to his newborn child, in violation of the NYSHRL and NYCHRL.

## ADMINISTRATIVE REQUIREMENTS

20. Simultaneously with the filing of this action, Plaintiff will also file a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") asserting his claims for violations of his rights under Title VII as alleged in this Complaint.

21. After the EEOC makes a determination and/or issues a Notice of Right to Sue, Plaintiff intends to seek leave to amend this Complaint to add causes of action under Title VII.

## JURISDICTION AND VENUE

22. Jurisdiction of this Court is proper under 29 U.S.C. §§ 2617 and 28 U.S.C. §§ 1331 as Plaintiff alleges claims pursuant to the FMLA.

23. The Court has supplemental jurisdiction over Plaintiff's claims under state and local law pursuant to 28 U.S.C. § 1367(a).

24. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as Defendants reside within the Southern District of New York, and a substantial portion of the acts complained of here occurred within this district.

## PARTIES

25. Plaintiff Joshua B. Kritz is an acclaimed and award-winning sports television producer. He is an adult resident of the state of New York, and at all relevant times, qualified as an "employee" of Defendants under all relevant statutes.

26. Defendant FuboTV is a corporation specializing in providing streaming television to customers, with a focus on sports entertainment. FuboTV maintains its principal place of business at 1290 Avenue of the Americas, 9th Floor, New York, NY 12207. At all relevant times, FuboTV controlled the terms and conditions of Plaintiff's employment, thus qualifying as his "employer" under all relevant statutes.

27. Defendant Pamela Duckworth is, upon information and belief, an adult resident of the state of New York, and, at all relevant times, has held the title of Head of FuboTV's Fubo Sports Network. At all relevant times, Ms. Duckworth had the authority to control the terms and conditions of Plaintiff's employment, thus qualifying as his "employer under all relevant statutes.

**FACTUAL ALLEGATIONS**

**I.     Mr. Kritz's Highly Successful Career in Sports Television Production**

28.    Mr. Kritz has enjoyed a long and successful career in sports television and production.

29.    His sports television and production career began at ESPN in 2011, where he began as a Production Researcher before being promoted to Senior Production Researcher in 2013 and then to Segment Producer in 2014.  In total, Mr. Kritz spent five years at ESPN, during which he led show/production groups that received two Emmy nominations for their work on ESPN's "SportsCenter," as well as an Emmy nomination for the debut season of ESPN2's "Olbermann," which Mr. Kritz launched and produced.

30.    Mr. Kritz then worked at the NFL Network/Embassy Row for three years, where he was a Senior Producer for and developed, launched, and produced the widely acclaimed "Good Morning Football" show.  Mr. Kritz led a show/production group that received an Emmy nomination for "Good Morning Football's" debut season and was later promoted to a Coordinating Producer for the show.

31.    Mr. Kritz then joined FuboTV in July 2019 as a Consulting Producer, where he immediately experienced immense success within just his first year.

32.    Among his many achievements, Mr. Kritz developed and produced FuboTV's first three original series: "Call it a Night," "The Cooligans," and "Drinks With Binks," which all successfully launched in September 2019 as part of the launch of the Fubo Sports Network.

33.    Mr. Kritz was also a well-respected leader at FuboTV, who led FuboTV's sports network's seamless transition to complete remote production when the COVID-19 pandemic

6

began in March 2020. Incredibly, because of this successful transition to remote work, the network needed to re-air prior programming for just one week.

34. In May 2020, Mr. Kritz won his first Telly Award, a prestigious award given out to honor excellence in video and television across all screens, for producing "Call it a Night." This award would turn to be the first of four Telly Awards Mr. Kritz received while working at FuboTV.

35. Based on his dedication and strong performance, in July 2020, FuboTV promoted Mr. Kritz to a full time FuboTV position, awarding him a substantial salary increase, upgrading his title to Coordinating Producer, and formally placing several direct reports for whom he was responsible for managing within his purview.

36. Moreover, at the end of 2020, Mr. Kritz received an additional raise and bonus award for his strong performance.

37. In May 2021, Mr. Kritz won his second and third Telly Awards for his work on the programs "Drinks With Binks" and "The Cooligans," respectively.

38. At the end of 2021, FuboTV awarded Mr. Kritz a substantial equity grant and a large bonus award in recognition of his contributions to the Company.

II. **Mr. Kritz Notifies FuboTV of His Intention to Take FMLA Leave in Connection with the Birth of his First Child**

39. In June 2021, Mr. Kritz and his partner received the wonderful news that they were expecting their first child in February 2022.

40. Shortly thereafter, in September 2021, Mr. Kritz disclosed this joyous, life-altering news to his supervisor Mike Gange and Defendant Duckworth, the Head of FuboTV's Fubo Sports Network department, and sought and obtained their approval for the dates he

planned to go on paternity/FMLA leave.  Mr. Kritz also notified FuboTV's Human Resources ("HR") department of the same information.

41.     On February 13, 2022, Mr. Kritz's partner gave birth to their first child, a boy. Mr. Kritz used approved paid time off to take the following week off from work, and then began the first half of his job protected FMLA/paternity leave, which was to last for six weeks.

42.     A few days after the birth of his first child, Mr. Kritz received further good news that had he had won a Cablefax Program Award, which recognizes and celebrates niche content and honors programming across a broad array of content platforms, for his work on the program, "Drinks With Binks."

43.     On February 21, 2022, Mr. Kritz officially began the first half of his paternity leave, immensely excited for and looking forward to spending the next six weeks bonding with his new son and helping his partner recuperate from childbirth, without fear of being penalized for not being at work.  Little did Mr. Kritz know that FuboTV had other plans in mind for him.

### III.     FuboTV Shockingly Demotes Mr. Kritz While He is on FMLA/Paternity Leave

44.     A few weeks into his paternity leave, and as Mr. Kritz was adjusting to being a new father and supporting his partner post-partum, on March 14, 2022, Mr. Kritz received a message from his supervisor, Mr. Gange, notifying him that his department was "restructuring," and as a result, Mr. Kritz's two direct reports and one indirect report would all be removed from his management (leaving him with no direct reports).  Mr. Kritz would also now be reporting into a less-tenured and far less-accomplished peer named David Pagan, who was being promoted to Executive Producer.

45.     To put it differently, Mr. Kritz was told that that FuboTV had decided to demote and take significant responsibilities away from him while he was on job protected FMLA leave.

46. This sudden and unexpected news understandably shook Mr. Kritz. If anyone deserved a promotion to Executive Producer, it was Mr. Kritz and not the lesser accomplished Mr. Pagan.

## IV. Mr. Kritz Returns to Work and Complains About FuboTV's Blatant Unlawful Interference with His FMLA Rights

47. Mr. Kritz returned to work on April 4, 2022, following the end of the first half of his planned FMLA/paternity leave, suddenly finding himself in a demoted role, and with zero direct or indirect reports.

48. Immediately upon returning, Mr. Kritz lodged formal objections to FuboTV's unlawful decision to demote him while he was out on FMLA/paternity leave. As discussed in more detail below, this protected activity would prove to be the death knell for Mr. Kritz's employment at FuboTV, as it was closely followed by FuboTV's subsequent decision to terminate his employment.

49. Specifically, in the first week of April 2022, Mr. Kritz met with Ms. Duckworth and Mr. Gange and expressed his dismay about being demoted while out on FMLA/paternity leave.

50. Around this time, Mr. Kritz also complained to an HR manager named Britany Jerez about the Company's illegal decision to demote him while he was on FMLA leave.

51. Ironically, a short time later, in May 2022, Mr. Kritz received his fourth Telly Award, this time for his work on the program, "Drinks With Binks."

52. A few weeks later, in a June 2022 one-on-one meeting, Ms. Duckworth noted to Mr. Kritz that FuboTV was closing in on a deal with actor Ryan Reynolds for Mr. Reynolds's production company to have its own new network to air exclusively on the FuboTV service. Mr.

Kritz expressed interest in taking the lead in managing that network and relationship on behalf of FuboTV and Ms. Duckworth agreed that he would be a good fit for the role once the deal closed.

53. Significantly, FuboTV would later publicly announce in early-August 2022, just days after notifying Mr. Kritz that he was being fired, that it had in fact reached a deal with Mr. Reynolds to create a new network on FuboTV.

**V.    Mr. Kritz Goes on FMLA Leave; FuboTV Once Again Tramples Upon His Rights By Firing Him While He is Still on Leave for False and Pretextual Reasons**

54. On June 27, 2022, Mr. Kritz took two weeks approved paid time off from work, and thereafter, began the second six weeks of his FMLA/paternity leave on July 11, 2022.

55. However, less than four weeks into this FMLA leave, on August 2, 2022, Mr. Kritz was unceremoniously fired. He was told by Ms. Duckworth that his position had been eliminated.

56. FuboTV claimed that Mr. Kritz was selected to be fired because the show on which he was working had come to an end. However, upon second glance, this explanation does not hold water.

57. For one, FuboTV is in the business of content creation, which means that it regularly launches new shows, some shows come to an end, and then new shows are launched.

58. This reality is evidenced by the two new original productions in FuboTV's fall 2022 television lineup, "Airing It Out with Housh and Scandrick" – an NFL-focused show for which Mr. Kritz was the natural choice to develop and produce given his previous successful creation and development of the Emmy-award winning "Good Morning Football" show on the NFL Network – and "The Young Person Basketball Podcast with R.J. Hampton."

59. As such, just because a show on which Mr. Kritz was working was coming to an end did not mean that there was no more work for him to do at the network.

60. Significantly, upon information and belief, there have been no other instances at FuboTV in which the Company has fired and/or failed to retain a producer whose show came to or was about to come to an end. Simply, to fire a producer, whether a full-time or freelance producer, for this reason is unprecedented and goes against FuboTV's prior practice.

61. Furthermore, there was in fact clearly no shortage of work at FuboTV for Mr. Kritz to take on at the time the Company made its unlawful decision to terminate his employment.

62. In fact, as detailed above, in what would turn out to be his final one-on-one meeting with Defendant Duckworth on June 2, 2022 (shortly before Mr. Kritz went on his second six-week FMLA leave), Ms. Duckworth acknowledged that the show Mr. Kritz was working on at the time was coming to an end, but expressly told Mr. Kritz that she had confidence that he could lead entire new networks that FuboTV aimed to create and launch.

63. As stated above, Ms. Duckworth specifically noted that FuboTV was close to a deal with Ryan Reynolds for his production company to launch its own network on the FuboTV service and that Mr. Kritz would be suitable to take the lead on managing that network and relationship once the deal closed (which it ultimately did in August, days after Mr. Kritz was fired).

64. Moreover, Mr. Kritz was and is by all measures an extremely hard worker who has enjoyed unparalleled success in his career and was clearly an incredible asset to FuboTV, rendering the decision to fire him baffling. It is beyond question that FuboTV had the utmost confidence in Mr. Kritz; that is, until he exercised his right to take FMLA/paternity leave.

65. In particular, before his employment was unlawfully terminated, Mr. Kritz had, among many achievements and accomplishments, successfully created and launched three

original production series with FuboTV – each of which has been nominated for and/or has won major industry awards.

66. Specifically, and as referenced above, since joining FuboTV, Mr. Kritz was heavily involved in developing, launching, and the day-to-day/hands-on producing of: (i) "Call It A Night," which has won a Telly Award; (ii) "The Cooligans," which has also won a Telly Award; and (iii) "Drinks With Binks," which has won two Telly Awards and a Cablefax Award.

67. Notably, these series were all launched as part of the debut of FuboTV's Fubo Sports Network which made it critical that each be successful. In other words, FuboTV entrusted Mr. Kritz, within his first year of joining the Company, to serve as one of just two senior-level producers leading these series, and in his second and third years, to be the only senior producer leading the daily production of these series.

68. As such, Mr. Kritz's strong and consistent performance and sustained success at FuboTV as detailed herein speaks for itself and dispels any notion either that his performance could have somehow contributed to the decision to fire him and/or that FuboTV could not have found a way to retain him if they so wanted.

69. In addition, of the five employees in his department who were fired in or around August 2022 as part of a supposed "reduction-in-force," Mr. Kritz was by far the most senior, non-on-air talent who was fired. In other words, FuboTV folded Mr. Kritz into a "layoff" that largely affected low-level employees to mask its animus towards him for exercising his FMLA rights.

70. Notably, a producer named A.K. was not fired as part of this "reduction-in-force," even though A.K. had reported into Mr. Kritz before Mr. Kritz was demoted after going on FMLA leave. Importantly, A.K. had only agreed to work at FuboTV – and to accept a lower

paying job, more junior title, and less responsibility and authority than his previous position – because he wanted to work with Mr. Kritz.

71. As expected, following Mr. Kritz's unlawful termination, A.K. left FuboTV in September 2022.

72. FuboTV chose to retain an employee who reported into Mr. Kritz and whose sole reason for agreeing to work at FuboTV was to work specifically with Mr. Kritz but fire Mr. Kritz, which completely undermines and discredits any purported legitimate justification for firing Mr. Kritz pursuant to any so-called "reduction-in-force."

73. Upon information and belief, FuboTV has retained and not penalized in any way other male FuboTV producers and other staff members who either did not go on paternity leave following the birth of their child or did not take their full allotment of FMLA/paternity leave, such as David Pagan.

74. Nor, upon information and belief, has FuboTV demoted, fired, or otherwise subjected any female employees who has taken their full allotment of FMLA/maternity leave (or even more than their legally allowed allotment of leave) to adverse actions.

75. Rather, given the foregoing, it is clear that Mr. Kritz was unlawfully discriminated and retaliated against for being a young father who exercised his right to take his full allotment of FMLA/paternity leave.

## FIRST CAUSE OF ACTION
## UNLAWFUL INTERFERENCE UNDER THE FMLA

76. Plaintiff repeats and realleges each and every paragraph above as if set forth herein.

77. As detailed above, Defendants unlawfully interfered with Plaintiff's rights under the FMLA by demoting him while he was on FMLA leave, *i.e.*, by failing to return Plaintiff to the same or substantially same role he had before he went on leave.

78. As detailed above, Defendants also unlawfully interfered with Plaintiff's FMLA rights by terminating his employment while he was on FMLA leave.

79. As such, Plaintiff has been damaged and is entitled to the maximum compensation under this law, including liquidated damages and attorney's fees and litigation costs.

## SECOND CAUSE OF ACTION
## UNLAWFUL RETALIATION UNDER THE FMLA

80. Plaintiff repeats and realleges each and every paragraph above as if set forth herein.

81. As detailed above, Defendants unlawfully retaliated against Mr. Kritz for exercising his FMLA rights by unlawfully demoting him, and then by unlawfully terminating his employment.

82. As detailed above, Defendants also unlawfully retaliated against Mr. Kritz for complaining about Defendants' violations of his FMLA rights when they demoted him while he was on FMLA leave by terminating his employment shortly after he engaged in such protected activity.

83. As such, Plaintiff has been damaged and is entitled to the maximum compensation under this law, including liquidated damages and attorney's fees and litigation costs.

## THIRD CAUSE OF ACTION FOR
## DISCRIMINATION UNDER THE NYSHRL

84. Plaintiff repeats and realleges each and every paragraph above as if set forth herein.

85. Under the NYSHRL, it is unlawful for an employer to discriminate against an employee because of, *inter alia*, their sex and their familial status.

86. As detailed above, Defendants violated the NYSHRL by discriminated against Plaintiff because of his sex and familial status, *i.e.*, because he was a father/parent and had children and exercised his right to take his full allotment of paternity leave following the birth of his child, by subjecting him to disparate terms and conditions of employment than female employees who took their full allotment of maternity leave following the birth of their child, and male employees who were not fathers/did not have children, including by demoting him and terminating his employment because he was a father and had children.

87. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses; severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

88. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

## FOURTH CAUSE OF ACTION
## AIDING AND ABETTING DISCRIMINATION UNDER THE NYSHRL
## (Against Defendant Duckworth)

89. Plaintiff repeats and realleges each and every paragraph above as if set forth herein.

90. The NYSHRL prohibits individuals from aiding, abetting, inciting, compelling, or coercing conduct forbidden by the statute.

91. Defendant Duckworth violated the NYSHRL by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct described above against Plaintiff.

92. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses; severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

93. Accordingly, as a result of Defendant Duckworth's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

## FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

94. Plaintiff repeats and realleges each and every paragraph above as if set forth herein.

95. Under the NYCHRL, it is unlawful for an employer to discriminate against an employee because of, *inter alia*, their sex and familial status.

96. As set forth above, Defendants violated the NYCHRL by discriminating against Plaintiff because of his sex and familial status, *i.e.*, because he was a father/parent and had children and exercised his right to take his full allotment of paternity leave following the birth of his child, by subjecting him to disparate terms and conditions of employment than female employees who took their full allotment of maternity leave following the birth of their child, and male employees who were not fathers/did not have children, including by demoting him and terminating his employment because he was a father and had children.

97. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses; severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

98. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

**SIXTH CAUSE OF ACTION**
**AIDING AND ABETTING DISCRIMINATION UNDER THE NYCHRL**
**(Against Defendant Duckworth)**

99. Plaintiff repeats and realleges each and every paragraph above as if set forth herein.

100. The NYCHRL prohibits individuals from aiding, abetting, inciting, compelling, or coercing conduct forbidden by the statute.

101. Defendant Duckworth violated the NYCHRL by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct described above against Plaintiff.

102. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses; severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

103. Accordingly, as a result of Defendant Duckworth's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.  Declaring that Defendants engaged in unlawful employment practices prohibited by federal, state, and New York City law;

B.  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful conduct and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff liquidated damages;

F.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action; and

G.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issue of fact and damages stated herein.

Dated: December 7, 2022                        Respectfully submitted,
       White Plains, New York

                                               **FILIPPATOS PLLC**

                                               By: _____
                                                   Tanvir H. Rahman
                                               199 Main Street, Suite 800
                                               White Plains, New York 10601
                                               T./F: 914.984.1111
                                               trahman@filippatoslaw.com

                                               *Counsel for Plaintiff*